UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MANITH VILAYHONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:23-cv-00613-GCS |
| ) | |
| SHAYNE DOWNEN, ) | |
| ASHLI EICHENSEER, ) | |
| and ) | |
| AARON J. MIDDLETON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Manith Vilayhong, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at East Moline Correctional Center ("East Moline"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that while he was housed at Centralia Correctional Center ("Centralia") Defendants Eichenseer and Downen caused him serious pain during an ear exam. He also alleges that Defendants Eichenseer and Downen refused to get him further medical or mental health assistance. As a result, Plaintiff suffered a panic attack and punched his cell door. Plaintiff further contends that he did not receive timely care after these incidents. On May 8, 2023, the Court completed

its preliminary review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 12). Plaintiff was permitted to proceed on the following counts:

> **Claim 1**: Eighth Amendment deliberate indifference claim against Defendants Eichenseer and Downen for their response to Plaintiff's ear infection, his request for a crisis team, and the injuries he sustained to his hand from punching his cell door on November 3, 2021; and
>
> **Claim 2**: Eighth Amendment deliberate indifference claim against Defendant Middleton for his response to Plaintiff's injured hand and his requests for a crisis team.

Now before the Court is Defendant Eichenseer's motion for summary judgment for Plaintiff's failure to exhaust administrative remedies. (Doc. 100, 101, 104).[1] Defendant Eichenseer argues that Plaintiff failed to exhaust his administrative remedies prior to filing the present lawsuit because he did not file any grievances which address Plaintiff's claim against him pursuant to the procedures set forth in the Illinois Administrative Code. Along with the motion for summary judgment, Defendant filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment. (Doc. 102). Plaintiff opposes the motion. (Doc. 103).

On August 22, 2024, the Court held a hearing on the motion for summary judgment, heard testimony from Plaintiff and argument from the parties, and took the

---

[1] To date, neither Defendant Downen nor Defendant Middleton filed a motion for summary judgment on the issue of failure to exhaust administrative remedies. The time to do so has passed. *See* (Doc. 99).

matter under advisement. (Doc. 107). Based on the reasons delineated below, the Court **GRANTS** the motion.

## FACTS

For purposes of exhaustion, the parties agree that the relevant grievances are #21-11-34 and #E21-12-15.[2]

On November 4, 2021, Plaintiff submitted an emergency grievance, #21-11-34, complaining about the incident related to this case, which took place on November 3, 2021. On November 10, 2021, the Chief Administrative Officer ("CAO") deemed the grievance nonemergent. (Doc. 101-2, p. 27, 28; Doc. 103, p. 13, 14). Thereafter, the counselor responded to the grievance stating: "[p]er C/O Downs: I do not recall this day or incident mentioned." (Doc. 101-2, p. 27). The grievance officer received the grievance on December 6, 2021. *Id.* On April 27, 2022, the grievance officer recommended that that the grievance be denied finding: "Vilayhong was interviewed at the time and Robinson found that Vilayhong's claim that he should not have been seen at his door was incorrect. COVID procedures were being followed. Vilayhong has been seen and treated for his broken hand. Vilayhong may request to be seen by Mental Health by submitting a written request." (Doc. 101-2, p. 25, 26; Doc. 103, p. 11, 12). The same day, the CAO concurred with the grievance officer. *Id.* The next day, the grievance was returned to Plaintiff

---

[2] In Plaintiff's response to the motion for summary judgment, Plaintiff disputes only #4 of Defendant's Undisputed Facts, which relates to grievance #21-11-34. During the hearing, Plaintiff also argued that #21-12-15 is relevant as that grievance was sent as an attachment to a grievance to the Administrative Review Board ("ARB") in November 2023. A review of the November 2023 grievance that Plaintiff sent to the ARB in November 2023 indicates that it was actually grievance #E21-12-15 that was sent as an attachment to the ARB and not #21-12-15. (Doc. 72-1). Thus, the Court will examine grievance #E21-12-15 and not #21-12-15.

informing him that if he did not agree he should send the grievance, the grievance officer's response, and the warden's response to the ARB within 30 days. (Doc. 101-3, p. 1).[3] The record does not include an appeal to the ARB within the 30 days after the Warden's signature.[4] On November 22, 2023, the ARB received a letter from Vilayhong referencing grievance #21-11-34 (Doc. 72-1, p. 14-38). On December 28, 2023, the ARB returned the grievance finding it was not submitted in the time frame out lined in Rule 504 and that the "Court case is outside the jurisdiction of this office; grievance from 2021 is past timeframes." (Doc. 72-1, p. 14).

On November 30, 2021, Plaintiff filed grievance #E21-12-15. On December 3, 2021, the CAO found the grievance an emergency and directed that it be expedited. (Doc. 101-2, p. 31). On March 28, 2022, the grievance officer responded to the grievance and recommended "that the grievance be partially upheld. Vilayhong has been scheduled to be seen by Mental Health and Tele-Psych Dr. Bednarz multiple times since the writing of this grievance. If Vilayhong has further concerns, Vilayhong should submit a written request to be seen through Nurse Sick Call." (Doc. 101-2, p. 29). That same day, the CAO concurred with the grievance officer's recommendation. *Id.* The next day, the grievance

---

[3] Plaintiff's Cumulative Counseling Summary entry dated 4/28/2022 reads: "Note: Your grievance # 21-11-34 is being returned to you because we have completed our portion of the grievance process regarding this grievance. If you do not agree with our response (Grievance Officer & Warden), YOU need to send the grievance, Grievance Officer response and (CAO) Warden's response to the A.R.B. within 30 days of the Warden's signature or it will be deemed untimely by the A.R.B. and be returned to you unanswered." (Doc. 101-3, p. 1).

[4] Plaintiff's IGRV Inmate History does not show an appeal to the ARB of any kind within 30 days of April 27, 2022. (Doc. 101-1, p. 1).

was returned to Plaintiff informing him that if he did not agree he should send the grievance, the grievance officer's response, and the warden's response to the ARB within 30 days. (Doc. 101-3, p. 1).[5] The record does not include an appeal to the ARB within the 30 days after the Warden's signature.[6] On November 22, 2023, the ARB received a letter from Vilayhong referencing grievance #E21-12-15. (Doc. 72-1, p. 39-47). On December 28, 2023, the ARB returned the grievance finding it was not submitted in the time frame out lined in Rule 504 and that the "Court case is outside the jurisdiction of this office; grievance # E-21-12-15 is past timeframes." (Doc. 72-1, p. 39).

Plaintiff filed this lawsuit on February 21, 2023. (Doc. 1).

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, in determining the outcome on a motion for summary judgment, the Court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but instead is to determine

---

[5] Plaintiff's Cumulative Counseling Summary entry dated 3/29/2022 reads: "Note: Your grievance # E-21-12-15 is being returned to you because we have completed our portion of the grievance process regarding this grievance. If you do not agree with our response (Grievance Officer & Warden), YOU need to send the grievance, Grievance Officer response and (CAO) Warden's response to the A.R.B. within 30 days of the Warden's signature or it will be deemed untimely by the A.R.B. and be returned to you unanswered." (Doc. 101-3, p. 1).

[6] Plaintiff's IGRV Inmate History does not show an appeal to the ARB of any kind within 30 days of March 28, 2022. (Doc. 101-1, p. 1).

whether a genuine issue of material fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in *Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, it is up to the Court to evaluate whether a prisoner has exhausted his or her administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that a prisoner did not exhaust administrative remedies, the Plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent.[7] *Id.* at 742. Alternatively, if the Court determines that the failure to exhaust was the prisoner's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). This comports with the PLRA's statutory purpose of "afford[ing] correction officials [the] time and opportunity to address complaints

---

[7]   *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). Additionally, it affords prison administrations an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo*, 286 F.3d at 1023. As an inmate confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Nor may a prisoner file a lawsuit while the prisoner is simultaneously proceeding through the required grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a Counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the

prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint."[8] 20 ILL. ADMIN. CODE § 504.810(a). Should the prisoner not be satisfied with the Counselor's response, the prisoner can then submit a formal grievance to the prison's Grievance Officer. *Id.* at (a)-(b). The Grievance Officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the Grievance Officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO shall review the findings and recommendations from the Grievance Officer and advise the inmate of his or her decision in writing. *Id.* If the prisoner is not satisfied with the CAO's decision, the prisoner can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the Grievance Officer's report and the CAO's decision to the appeal. *Id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)–(e).

A separate procedure exists for emergency grievances. Inmates may file emergency grievances directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The

---

[8] This does not preclude an inmate from filing a grievance when the names of individuals are not known, but the inmate must include as much descriptive information about the individual as possible. *See* 20 ILL. ADMIN. CODE § 504.810(a).

CAO will determine if there is "a substantial risk of imminent personal injury or other serious or irreparable harm" to the inmate that warrants the grievance being handled on an emergency basis. *Id.* If the CAO classifies the grievance as an emergency grievance, the CAO shall "expedite the process of the grievance and respond to the offender indicating what action shall be or has been taken." *See* 20 ILL. ADMIN. CODE § 504.840(b). The inmate will also be informed by the CAO if it is determined that the grievance is non-emergent. *See* 20 ILL. ADMIN. CODE § 504.840(c). In such a case, notification will be made in writing that the inmate should "resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.* When an inmate appeals a grievance that has been deemed emergent by the CAO, the ARB "shall expedite the processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

Lastly, there are certain circumstances where a prisoner may exhaust his or her administrative remedies by filing a grievance directly with the ARB. *See* 20 ILL. ADMIN. CODE § 504.870. Those circumstances include grievances addressing: (1) placement in protective custody; (2) involuntary administration of psychotropic medication; (3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and (4) all other issues, with the exception of personal property issues, that occurred at a previous institution." *Id.* The ARB "shall review and process . . . [such] grievance[s] in accordance with Section 504.850." *Id.*

### DISCUSSION

The PLRA provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all administrative remedies. *See* 42 U.S.C. §

1997e(a); *Pavey,* 544 F.3d at 740; *See also Woodford,* 548 U.S. at 88, 93 (holding that "complet[ing] the administrative review process" is "a precondition to [a prisoner] bringing suit in federal court."). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo,* 286 F.3d at 1024. Moreover, "exhaustion must precede litigation." *Ford,* 362 F.3d at 398. Federal courts strictly enforce this requirement. *See Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Accordingly, if the prisoner files his lawsuit before his administrative remedies are fully exhausted, the lawsuit must be dismissed, even if the prisoner anticipates the grievance will soon be exhausted or will become exhausted during the pendency of the lawsuit. *See Hernandez*, 814 F.3d at 841-842; *Ford*, 362 F.3d at 398.

Here, the Court finds that Vilayhong did not exhaust his administrative remedies as to his claim against Defendant Eichenseer with either grievance prior to filing this lawsuit. He testified that he did not send the grievances to the ARB within 30 days of receiving them from the CAO as required under the PLRA.[9] He also admitted that the first time he sent both grievances to the ARB was as exhibits to another grievance on November 15, 2023. Vilayhong filed this lawsuit on February 21, 2023. (Doc. 1). Thus, Vilayhong did not exhaust his administrative remedies.

As to Vilayhong's argument that Eichenseer's failure to produce her grievance information form thwarted his attempts at exhaustion and that he needed this

---

[9] At the hearing, Plaintiff testified that at the time he was supposed to have appealed the grievances, he was still having some PTSD issues from the incident. As such, he wanted to leave it alone, and he did not want to deal with it anymore.

information to conduct discovery on this issue prior to the hearing, the Court finds that Vilayhong is mistaken. First, the receipt of a grievance information form or the lack of receipt of a grievance information form has no bearing on whether Plaintiff was thwarted in the exhaustion of his administrative remedies. In fact, Plaintiff testified that not having a grievance information form did not prevent him from sending the grievances to the ARB within the required 30-day window. Second, the grievance information form is not relevant to and is not a part of the requirements for exhaustion under the PLRA. The form is simply used by the facility to obtain a response from the individual who is the subject of the grievance. Thus, discovery regarding this topic would not have produced information that would have aided Plaintiff in this stage of the proceedings.

## Conclusion

Accordingly, the Court GRANTS Defendant Eichenseer's motion for summary judgment for Plaintiff's failure to exhaust administrative remedies. (Doc. 100). The Court **DISMISSES without prejudice** Plaintiff's claims against Ashli Eichenseer for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same at the conclusion of the case. Remaining in this case are Plaintiff's claims against Defendant Downen (Count 1) and against Defendant Middleton (Count 2).

IT IS SO ORDERED.

DATED: August 28, 2024.

Digitally signed by Judge Sison
Date: 2024.08.28 12:01:14 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**